UNITED STATES v. GROVES (two cases).
SAME v. BLAIR.
SAME v. BOYER.
Nos. 111, 114, 113, 112.

District Court, W. D. Pennsylvania.
Jan. 7, 1937.

Charles F. Uhl, U. S. Atty., and Stanley Granger, Asst. U. S. Atty., both of Pittsburgh, Pa.

Weil, Christy & Weil, of Pittsburgh, Pa., Leonard Weinberg and Harry J. Green, both of Baltimore, Md., and James I. Marsh, of Pittsburgh, Pa., for relators.

John J. Abt, of Washington, D. C., for Senate Subcommittee.

GIBSON, District Judge.

The relator in each proceeding was indicted in the District of Columbia upon

**4·**

charges of willfully failing to appear and testify and produce certain documents as demanded by a subpœna issued by a subcommittee of the United States Senate Committee on Education and Labor. He was arrested and given a hearing before a United States Commissioner of·this District, who committed him for trial upon the charges. Thereupon each relator obtained a writ of habeas corpus, and hearing thereon followed, the court at the same time hearing all parties upon a motion of the United States Attorney that each relator be ordered to be removed to the District of Columbia for trial.

The Senate subcommittee had been authorized "to make an investigation of violations of the rights of free speech and assembly and undue interference with the right of labor to organize and bargain collectively." The subpœna in question directed the relator to appear and testify relative to the subject matters under consideration by said committee and to produce the minute book, contracts, reports, documents, books of account, etc., either belonging to the relator or to the Railway Audit & ·Inspection Company, Inc., with which he was connected. None of the subjects of the duces tecum part of the subpœna were specifically set forth or described. The date fixed for hearing by the subpœna was August 19, 1936, but the relator was later advised by telegram from the secretary of the committee that the hearing had been continued to August 21, 1936. The subpœna did not contain the clause ordinarily incorporated in a court subpœna which directs the witness to remain until excused by the court.

On August 21, 1936, the committee met. None of the relators were present, but they were represented by ·counsel who promised their attendance within a short.time. After other witnesses had been heard, counsel for the relators informed the committee (represented by Senator La Follette) that he had just been notified that Judge Proctor ·of the District Court for the District of Columbia had that day issued a rule upon each relator to show cause on August 25, 1936, why he should not be enjoined from testifying and producing the papers as demanded by the subpœna. None of the relators appeared after that announcement. Senator La Follette, after declaring that the subpœnas were in full force and effect, adjourned the hearing until August 27, 1936, at which time he directed the relators to appear.

On the return day of the rule to show cause, counsel for the committee having obtained leave to appear as amicus curiæ, stated that it was not the intention of the committee to proceed with the hearings in which relators were concerned, and the hearing upon the rule was continued to October 12, 1936, and from·time to time thereafter. In the meantime the indictments were presented to the grand jury and the present proceedings followed.

Upon hearing counsel for the relators offered in evidence a transcript of the record of the hearing before the United States Commissioner and of the proceedings before the Senate committee on August 21, 1936, and also a transcript of the proceedings before Judge Proctor. The United States attorney offered the indictments and rested.

█ Each relator contends that the record shows the indictments in each case to be invalid, because based upon a subpœna which was invalid in the premises. This invalidity is declared upon two grounds: First, that the defendant was subpœnaed to appear on the 19th of August without order to remain until dismissed, and that the secretary of the committee had no power to keep the subpœna in force by his telegram fixing the date of hearing as the 21st; and, second, that the subpœna, on its face, shows a mere fishing expedition into the private affairs of the relator and his company, not within the scope of the committee's investigation, and an encroachment upon defendant's rights under· the Fourth Amendment. As to the second of these claims, if the indictment contained only its second count, it would present a serious question to this court. The duces tecum part of the subpœna is so lacking in specification and description, and so wide in its demands, that it is felt it could not have been ordered had the application for it been made to this court. But the first count of the indictment does not charge the failure to produce the documentary proof, but only a violation of the order to appear and testify. The ad testificandum part of the subpœna does not disclose the undue widening of the scope of the committee's jurisdiction which is perhaps to be more than suspected from the nature of the duces tecum part. Despite the somewhat uncertain limit of the inquiry of the committee, we feel that the order to appear and testify was within its scope. If that scope were exceeded upon the hearing, the relator could refuse to answer.

 The technical objection, based upon the extension of the date of hearing fixed in the subpœna, does not seem to be vital. It was not urged as a reason for the absence of the relators at the hearing. They were in Washington for the purpose of attending the hearing, and the presentation of the claim now seems to be an attempt to "mend the hold."

 In addition to the contention of invalidity of the subpœna, the relators each declare that the record fails to disclose "probable cause" in the hearing before the commissioner. The basis for this claim is the rule to show cause order made by Judge Proctor upon the morning of the day of the hearing before the committee. This order, urges their counsel, temporarily compelled the defendants to refrain from testifying before the committee, and absolves them from the charge of willful failure to appear and testify.

Even if it be admitted that the order of the District Court had the force of a temporary injunction, which is somewhat doubtful under all the circumstances, it would appear to be defensive matter to be considered in the trial court rather than in the instant proceeding. The defendants did not appear before the committee at the time ordered, and did not testify. Whether the nonappearance was due to the order of court or was willful is a matter for proof in the trial court. There was no direct testimony offered in the hearing before this court as to the mental attitude of the defendants in respect to it, and the mere existence of the rule to show cause does not, in itself, establish the failure to appear as not wilful.

 Although not previously mentioned, we have not overlooked the contention of defendants that their failure to appear was condoned by the chairman of the committee by his declaration near the end of the session, that the subpœnas were still in force, and his order that the witnesses appear before the committee on August 27, 1936. This statement was immediately followed by a further declaration to the effect that he proposed to see that all proper legal steps should be taken to punish the defendants for their "contumacy." The mere continuance of the hearing, therefore, cannot be interpreted as a condonation.

The writ of habeas corpus will be discharged, and each defendant will be ordered to give bail for his appearance before the District Court of the District of Columbia, or in default thereof that he be removed to that District for trial. The United States Attorney will present the removal order to this court.